**Teddie VAN BUSKIRK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-78-184.**

Court of Criminal Appeals of Oklahoma.

May 16, 1980.

Don L. Wyatt, Saunders & Wyatt, Ada, for appellant.

Larry Derryberry, Atty. Gen., Harold T. Garvin, Jr., Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Presiding Judge:

On July 9, 1977, during an argument between the appellant and her boyfriend, Robert Rose, the pair stopped in a low place between two hills on the road from Allen to Ada, Oklahoma. Rose was ordered to get out of the car, and he was thereafter struck by the appellant's vehicle. The appellant then drove away, leaving Rose in the roadway. Subsequently, Rose was struck by another car moving at a high speed. The appellant was charged with Murder in the Second Degree in Pontotoc County District Court No. CRF–77–71. She was convicted of Manslaughter, Second Degree, and sentenced to two (2) years' imprisonment.

## I

The first question for determination is whether the trial court erred in instructing the jury on Manslaughter in the Second Degree. The appellant's position is that the manslaughter in the second degree statute, 21 O.S.1971, § 716, was impliedly repealed when the negligent homicide statute, 47 O.S.1971, § 11–903, was passed. The appellant's assertion is correct to the extent that motor vehicles are involved. *Atchley v. State*, Okl.Cr., 473 P.2d 286 (1970). However, the negligent homicide statute applies only when death is caused "by the driving of any vehicle in reckless disregard of the safety of others." Section 11–903(a). A

review of the facts indicates that § 11–903(a) is not applicable here.

According to the appellant's testimony, she was driving when Rose slapped her, knocking her eyeglasses off her face. She stopped the car, ordered Rose to get out and searched for her glasses. Rose left the passenger's side of the car and started to walk in front of the vehicle around to the driver's side. The appellant said that as she leaned over to look for her eyeglasses she accidentally pressed the gas pedal. The result was that the car lurched forward, lifting Rose onto the hood. Rose pounded on the windshield, cursing, and the appellant then hit the brake pedal, throwing Rose to the ground. The appellant testified that Rose was starting to get up as she put the vehicle in reverse, swerved around him and drove away.

A passing motorist saw Rose lying in the roadway. He stopped his car and attempted to signal to a rapidly approaching car. The motorist said that Rose was "sort of moaning." The motorist's efforts to stop the approaching car were to no avail. The automobile struck Rose and dragged him a short distance down the highway. Having ascertained that Rose was dead, he pulled the body from the road.

Under these facts, we do not believe that Rose was the victim of negligent homicide. The crime was committed, not when the appellant struck Rose, but when she abandoned him in a position of peril. At that time she could reasonably have anticipated that another vehicle might strike Rose. The foreseeability of such a consequence—where the victim lay helpless in a lane of traffic, in a low place between two hills—is apparent. It places the appellant squarely within the scope of 21 O.S.1971, § 716:

> "Every killing of one human being by the act, procurement *or culpable negligence* of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree." (Emphasis added)

Thus, the trial court correctly instructed the jury on Manslaughter in the Second Degree.

## II

■ In the fourth, fifth, and sixth assignments of error the appellant complains that the trial court failed to give instructions on proximate cause, justifiable homicide and/or self-defense, and circumstantial evidence. The record indicates that at the time of the trial the appellant neither objected to the instructions given by the trial court nor requested that any particular instruction be given. In such a situation, this Court will generally limit itself to an examination of the instructions which were given, to see whether they fairly covered the issues raised during the trial. *Kelsey v. State*, Okl.Cr., 569 P.2d 1028 (1977). We have carefully examined the trial court's instructions and find that they adequately cover the subject matter of inquiry.

## III

■ The next alleged error also relates to the jury instructions. The fourth instruction defines murder in the second degree, but the ninth instruction informs the jury that the trial judge made a judicial determination that the facts of the case would not support a conviction for murder in the second degree, and that they should not consider that charge. The appellant argues that the combination of instructions must have prejudiced the jury against her. Although we are uncertain why the trial court chose to proceed in this manner, we fail to see how the appellant suffered any prejudice thereby. The appellant raises no more than speculation as to the effect of the instructions. Where, as here, the appellant has been deprived of no fundamental right, this Court will not search the books for authorities to support the mere assertion that the trial court has erred. *Tabor v. State*, Okl.Cr., 582 P.2d 1323 (1978).

## IV

■ The remaining allegations of error relate to the sufficiency of the evidence.

The appellant argues that her demurrer to the evidence should have been sustained, that the trial court erred in failing to direct a verdict in her favor, and that the verdict is contrary to the evidence. When an appellant challenges the sufficiency of the evidence presented at the trial, the function of this Court is to determine whether the State presented a prima facie case. If so, then all questions of fact were properly submitted to the jury. *Ewing v. State*, Okl.Cr., 525 P.2d 1243 (1974); *Hunt v. State*, Okl.Cr., 601 P.2d 464 (1979). In the case before us, the State did present a prima facie case, and these assignments of error are without merit. The judgment and sentence is *AFFIRMED*.

BRETT and BUSSEY, JJ., concur.